IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHERYL D. MADRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No.  15-9264-JAR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Cheryl Madricks' application for child's insurance benefits, under Title II of the Social Security Act.[1]  Because the Court finds that Defendant Commissioner's findings at step three are not supported by substantial evidence, the Court reverses and orders an immediate award of benefits.

**I.      Procedural History**

On February 7, 2012, Plaintiff filed an application for child's insurance benefits, alleging a disability onset date of October 31, 1974.  Plaintiff had not attained the age of 22 as of the alleged onset date.  Plaintiff's application was denied initially and upon reconsideration. Plaintiff timely requested a hearing before an administrative law judge ("ALJ").  After a hearing as well as a supplemental hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff then timely sought judicial review before this Court.

---

[1] 42 U.S.C. §§ 401–434.

## II.   Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2]   The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]   In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III.   Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5] To be eligible for adult disabled child benefits based on the earnings record for an insured parent, the claimant must be over the age of 18, unmarried, and found disabled before her twenty-second birthday.[6]   Thus, the relevant period is from the month preceding the claimant's attainment of the age of 18, until the day before the claimant's 22nd birthday.   In this case, the relevant period is thus from October 31, 1974 to November 5, 1978.

The Secretary has established a five-step sequential evaluation process to determine

---

[2] *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3] *Id.* (quoting *Castellano*, 26 F.3d at 1028).

[4] *Id.*

[5] 42 U.S.C. § 423(d)(1)(A).

[6] 20 C.F.R. § 404.350(a) (2016).

whether a claimant is disabled.[7] If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[8]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[9] since October 31, 1974, the alleged onset date. Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has the medically "severe" impairment of: fetal alcohol syndrome resulting in intellectual disability.

But Plaintiff challenges the ALJ's determination at step three that prior to attaining the age of 22, she did not have an impairment or combination of impairments that met or equaled a listing. Plaintiff claims the ALJ erred in finding that she did not meet the listings for 12.05(C) and (D) (Intellectual disability),[10] and 12.02 (Organic mental disorder).[11]

Plaintiff also challenges the ALJ's determination of both physical and mental Residual Functional Capacity ("RFC"), which Plaintiff argues is the product of the ALJ: (1) failing to properly consider and discuss the non-medical source opinion of Plaintiff's vocational rehabilitation counselor; (2) concluding that she could perform a full range of work at all exertional levels, contrary to substantial evidence that her height, weight and under-developed musculature and scoliosis precluded her ability to lift, carry or maintain a forty-hour work week; and (3) concluding that she could perform simple, repetitive and routine tasks in a work environment, contrary to substantial evidence that she had limitations in social functioning, an

---

[7] 20 C.F.R. § 404.1520 (2012).

[8] *Id.*

[9] *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[10] 20 C.F.R., pt. 404, subpt. P, App. 1, § 12.05 (2016).

inability to concentrate, persist and maintain an adequate pace, and an inability to appropriately interact with coworkers and supervisors.

## IV. Discussion

### Did Plaintiff meet or equal the Listing at 12.05 (Intellectual Disability)?

At step three of the sequential evaluation process, the ALJ determines whether the claimant's impairments meet or equal one of the listings in Subpart P, Appendix 1,[12] for if she does, she is disabled.[13] It is the claimant's burden to present evidence establishing that her impairment(s) met or equaled listed impairment(s).[14] Plaintiff contends the ALJ erred in finding that prior to attaining age 22, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of listing 12.02 (Organic mental disorder) or listing 12.05(C) and (D) (Intellectual disability).

### Listing 12.05(C)

Listing 12.05(C) states in relevant part that

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.[15]

To prove that she meets Listing 12.05(C), a claimant must prove: (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) "a physical or other mental impairment

---

[11] 20 C.F.R., pt. 404, subpt. P, App. 1, § 12.02 (2016).

[12] 20 C.F.R. § 404.1520(d) (2012); 20 C.F.R. § 404.1526 (2011).

[13] 20 C.F.R. § 404.1520(d) (2012).

[14] *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

[15] 20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.05(C).

imposing additional and significant work-related limitation of function."[16]   Here, the ALJ properly found that Plaintiff had met the first prong; there is substantial, undisputed evidence that before the age of 22, Plaintiff had a valid verbal, performance or full scale IQ in the range of of 60 to 70.

The ALJ found that Plaintiff had no other severe medically determinable impairments other than her intellectual disability.   Plaintiff argues that her intellectual disability suffices to show the requisite physical or other mental limitation for listing 12.05(C).   But the Tenth Circuit requires that it be an impairment "apart from the decreased intellectual function."[17]   Notably, fetal-alcohol syndrome may cause additional physical and mental impairments that are not related to decreased intelligence, such as growth restriction, facial abnormalities, microcephaly, skeletal abnormalities, cardiac abnormalities, and attention deficit disorder.[18]   As further discussed below, there was substantial evidence that Plaintiff suffered from skeletal abnormalities and other physical limitations.

In *Hinkle v. Apfel*,[19] the Tenth Circuit held that the listing 12.05(C) requirement of an additional and significant work-related limitation of function requires a limitation "that has more than a slight or minimal effect on the claimant's ability to perform work."[20]   Yet, "the second prong limitation 'need not be disabling in and of itself.'"[21]   Moreover, the Tenth Circuit adopted

---

[16]*Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir.1997).

[17]*Hinkle*, 132 F.3d at 1352.

[18]*2005 Current Medical Diagnosis & Treatment* 740 (Lawrence M. Tierney, Jr. et al. eds., 44th ed. 2005).

[19]132 F.3d at 1351.

[20]*Id.* at 1352.

[21]*Id.* (citing *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir.1985)).

the standard that the second prong limitation "is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function."[22]   In adopting the step two analysis for purposes of the second prong limitation of listing 12.05(C), the Tenth Circuit thus counsels that a claimant must show more than the mere presence of a condition or ailment, but only need make a *de minimus* showing of a physical or other mental impairment, and that this analysis should "closely parallel the step two standard."[23]

Here, the ALJ acknowledged that Plaintiff had scoliosis of the spine, but found that it was mild scoliosis at the age of 17 and that there was no evidence that it caused any functional limitation before she turned 22.   The Court disagrees.   There is evidence in the record that Plaintiff suffered from a long-standing history of back pain related to kyphoscoliosis of her thoracic spine and underdevelopment of her skeletal system with poor musculature.   At the age of 17, this diagnosis was confirmed by x-ray, which revealed a markedly underdeveloped bony structure that was associated with kyphoscoliosis and a very small chest cavity.   This condition had not resolved when Plaintiff was seen by Dr. Carey, two months before her twenty-second birthday.   At that time, Plaintiff was four foot ten inches tall and weighed a mere 66 pounds.[24]   Dr. Carey opined that Plaintiff had prominent thoracic kyphosis and that all of her extremities were quite thin with poor musculature, and that she had decreased motor strength symmetrically throughout.   Moreover, Plaintiff testified that although in 1974, at the age of 18, she worked for

---

[22]*Id.*

[23]*Id.*

[24]The evidence shows that after her twenty-second birthday, Plaintiff spent eighteen months in physical therapy working on her posture; strengthening of her cervical and lumbar spine; and learning stretching exercises to

a short period of time at a sheltered workshop, she could not perform the job because the prolonged standing increased her back pain.

The ALJ disregarded this evidence, instead giving significant weight to Dr. Carey's opinion that "I find nothing which should limit Cheryl's activities."  Not only was Dr. Carey's statement a generic opinion that neither directly addressed work-related functional limitations, it was inconsistent with Dr. Carey's other findings about Plaintiff's height, weight, musculature, and strength limitations.  Indeed, those specific findings of Dr. Carey were consistent with other substantial evidence in the record, including evidence from Plaintiff's vocational rehabilitation provider that showed that Plaintiff was limited physically by her small stature and her lack of physical strength due to her underdeveloped muscle and bone structures and scoliosis. Although vocational rehabilitation counselors are non-medical sources, their treatment records are nonetheless evidence that should be considered with respect to the severity of an impairment and its effect on the ability to work, and not rejected without reason or analysis as the ALJ did here.[25]

For these reasons, the ALJ erred in according substantial weight to Dr. Carey's opinion that nothing should limit Plaintiff's activities.[26]  In fact, the erroneous effect of adopting this

---

improve her neck and back pain that was a result of her scoliosis.

[25] 20 C.F.R. § 404.1513(d) (2014); Social Security Ruling 06-03p, *Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies* (Aug. 2006).

[26] In *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2) – (6) the court held that the ALJ must consider the following factors in determining what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

unexplained, unsupported, generic opinion, is demonstrated in the ALJ's RFC determination that this 66 pound, four-foot ten-inch woman could perform work at all exertional levels, which would include heavy lifting.[27]

## V.     Conclusion

In short, this Court finds that Plaintiff meets both prongs of Listing 12.05(C); (1) Plaintiff had a valid verbal, performance or full scale IQ of 60 to 70; and (2) Plaintiff had an additional physical impairment that meets the *de minimus,* step two standard, in that she suffered from painful scoliosis, as well as underdeveloped muscle and bone structures and lack of physical strength, that although perhaps not disabling, had more than a slight or minimal effect on her ability to perform work.   The Court further finds that additional fact-finding would serve no purpose, such that this court may reverse the Commissioner's decision and order an immediate award of benefits.[28]

---

[27] Given that the Court finds grounds for reversal at step three, because the ALJ erred in finding that Plaintiff did not meet Listing 12.05(C), the Court will not address Plaintiff's other grounds for reversal with respect to Listing 12.05(D) or Listing 12.02.  But, the Court notes that even if the Court did not reverse on the basis of Listing 12.05(C), the Court would remand for further consideration of whether Plaintiff meets Listings 12.05(D) and 12.02.  The ALJ found that Plaintiff failed to meet either of these listings because she could not show that she satisfied the identical criteria in paragraph D of 12.05 and 12.02 that require that the claimant's mental impairment must have resulted in at least two of the following, prior to age 22: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of an extended duration.   The ALJ opined that Plaintiff had mild restrictions in activities of daily living and social functioning and moderate limitations with concentration, persistence and pace.  But the ALJ improperly relied upon evidence that by Plaintiff's senior year in high school, she was taking no special education classes.   As Plaintiff posits, the ALJ should have considered what classes Plaintiff was taking her senior year and whether they were even amenable to a special education class; Plaintiff asserts that her senior year classes were not core classes, but were classes designed to prepare her to leave school, including vocational training, work experience, and supervised independent study.   It further appears that the ALJ did not fully consider all the evidence in concluding that Plaintiff had only mild limitations in social functioning, and only moderate difficulties in concentration, persistence or pace, as well as in concluding that Plaintiff did not meet the criteria in Listing 12.02 of an inability to function outside a highly supportive living arrangement.   There is evidence that Plaintiff lived with her parents for many years, and thereafter lived with a caretaker and under her brother's close supervision.

[28] *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993) (court's discretion to reverse and order immediate award of benefits or remand for further administrative proceedings).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's decision denying Plaintiff disability benefits is **REVERSED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for an immediate award of disability benefits in accordance with this Memorandum and Order.**

**IT IS SO ORDERED.**

Dated: <u>August 8, 2016</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE